**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

IN RE:

SHERYL A. BRUNER                                                                                          CASE NO. 13-51267

DEBTOR

PHAEDRA SPRADLIN, TRUSTEE                                                                 PLAINTIFF

V.                                                                                        ADVERSARY CASE NO. 14-5009

MICHAEL J. KHOURI
KHOURI LAW FIRM                                                                                    DEFENDANTS

## MEMORANDUM OPINION

Debtor's Chapter 7 Trustee seeks turnover of a fee paid to Debtor's criminal defense counsel post-petition. The fee was wire-transferred to Defendants by the Debtor's elderly mother, and the parties hotly dispute whether the Debtor was the true source of the transferred funds. In their dispute over the fee's origins, however, the parties miss a more fundamental point. Turnover can only be used to demand return of estate property to the Trustee, not to avoid transfers of what <u>was</u> estate property. Even if the funds were originally property of the estate, the transfer to Defendants divested the estate of any interest in those funds. The Trustee's request for turnover fails.

**I.    Facts and Procedural History**

**A. The Bankruptcy and Criminal Cases**

The Debtor filed for chapter 13 bankruptcy on May 16, 2013. Her petition listed no cash on hand, and $1,500.00 held in a single checking account. The Debtor's bankruptcy proceeded in the normal course until, on December 5, 2013, the Medicaid Fraud Unit of the Office of the Kentucky Attorney General executed a search warrant at the Debtor's home and seized $270,000

in cash it found there. The Chapter 13 Trustee subsequently moved to convert the Debtor's case, citing the Debtor's concealment of funds. On December 27, 2013, the Court granted the Trustee's motion and converted the Debtor's case to a case under chapter 7. The Chapter 7 Trustee then moved for orders compelling the Debtor to turnover, among other assets, all funds held in the Debtor's SAB [Sheryl A. Bruner] Irrevocable Trust accounts. The Court granted these motions on February 13, 2014.

Meanwhile, the discovery of concealed assets in the Debtor's home exposed her to substantial criminal liability. On January 9, 2014, the Debtor was indicted in federal court for theft of government money (specifically, fraudulently claiming Social Security benefits), bankruptcy fraud, and money laundering. The Debtor was convicted of each of these offenses in March of 2014. The Sixth Circuit subsequently affirmed the Debtor's conviction. *See United States v. Bruner*, --- F. App'x ----, 2015 WL 4567843 (6th Cir. July 30, 2015).

One week after the Debtor's federal indictment, on January 16, 2014, the Debtor's mother, Mary Jane Newton, deposited $51,000 in cash into her checking account at Fifth Third Bank, held jointly with the Debtor. Immediately after making this deposit, Ms. Newton wire-transferred $50,000 from the joint account to Defendant Khouri Law Firm, in order to pay to retain Defendant Michael Khouri as the Debtor's criminal counsel. Defendants represented the Debtor in her federal criminal case, and in her appeal. On February 11, 2014, the Trustee filed this adversary proceeding, seeking turnover of Defendants' fee from Defendants pursuant to 11 U.S.C. § 542.

### B. The Trial

The Court held a trial in this matter on July 28, 2015. The Trustee elicited testimony from nine witnesses, whose testimony went to four general subjects: the seizure of cash from the

2

Debtor in December 2013, the circumstances of the subsequent wire transfer to Defendants, the Debtor's cash withdrawals from her various bank accounts in the weeks prior to the transfer, and Ms. Newton's personal finances.[1]  All of this testimony was offered to prove that the Debtor, not Ms. Newton, was the ultimate source of the wire transfer to Defendants.  The Defendants proffered no witnesses.

1. The Seizure

Wesley Duke, an Assistant Attorney General for the Kentucky Medicaid Fraud Unit, testified in detail about the December 2013 search of the Debtor's home.  Duke personally supervised the search, and testified that approximately $270,000 was seized from the Debtor's home–in which the Debtor's mother, Ms. Newton, also resided.  Duke testified that the search was thorough and that, in his opinion, no hidden cash was left in the home.

The Trustee also attempted to introduce Ms. Newton's former testimony, in the Debtor's federal criminal trial, to the effect that no cash was left in her home after the December 2013 search.  The Trustee argued that Ms. Newton was unavailable to testify, and that her former testimony met the former-testimony hearsay exception.  *See* FED. R. EVID. 804(b)(1).  Defendants objected, and the Court sustained their objection.  The Court now elaborates on its ruling.

Rule 804(b)(1) requires that, where former testimony is sought to be introduced in a civil case, the party against whom the testimony is introduced, or the "predecessor in interest" of that party, must have had an "opportunity and similar motive" to develop the testimony at the prior proceeding.  FED. R. EVID. 804(b)(1)(B).  The Trustee argued that Defendant Khouri was the

---

[1] The Trustee also introduced testimony from Frederick J. Anderson, an attorney who represented the Debtor immediately after the December 2013 search and seizure.  Mr. Anderson testified regarding payments he received to represent the Debtor, including a $25,000 payment that he refunded.  He was not allowed to testify as to his beliefs regarding the source of that payment.

3

predecessor in interest of the Trustee, because both Defendant Khouri (at the criminal trial) and the Trustee (in this matter) had similar motives to elicit from Ms. Newton testimony that there was no cash left in her house after the search. This argument fails because the Trustee sought to offer Ms. Newton's testimony against the Defendants. For the hearsay exception to apply, it is Defendants, not the Trustee, whose predecessor in interest must have had a similar motive to develop Ms. Newton's testimony at the criminal trial. The Trustee's predecessor is irrelevant.

Furthermore, Ms. Newton's testimony was not offered against a party which itself had a similar motive to develop her testimony at the criminal trial, for two reasons. First, Defendants were only involved in the Debtor's criminal trial as counsel to the Debtor; they were not "parties" in that case. Second, even if Defendants were "parties" in the criminal case within the meaning of Rule 804, their motives in the criminal case were the precise opposite of their motives in this proceeding. In this proceeding, it was in Defendants' interest to prove that Ms. Newton had cash reserves which were untapped by the December 2013 search.

2. The Transfer

Erin O'Brien, a personal banker at Ms. Newton's local Fifth Third Bank branch, testified to the circumstances of the wire transfer. Ms. O'Brien was Ms. Newton's personal banker, and had done business with Ms. Newton on many occasions prior to the transfer. She testified that Ms. Newton, accompanied by a caregiver and two persons unfamiliar to Ms. O'Brien, made a $51,000 cash deposit into her joint checking account on January 16, 2014, and then sent a wire transfer of $50,000 to Defendant Khouri Law Firm that same day. Ms. O'Brien testified that she vaguely recalled Ms. Newton explaining that the cash came from another bank account. Ms. O'Brien also testified to the contents of bank records on the Fifth Third joint account. These

4

records were subsequently authenticated by Christina Keeling, a retail risk advisor for Fifth Third Bank who testified to Fifth Third's recordkeeping.

3. The Debtor's Withdrawals

Three witnesses from three banks testified to the Debtor's cash withdrawals in the days and weeks prior to the wire transfer. Loreen Hughes, a loss prevention manager at PNC Bank, testified to two withdrawals the Debtor, in her capacity as trustee, made from her SAB Irrevocable Trust accounts. On December 25, 2013, the Debtor withdrew $25,000; on January 14, 2014, the Debtor withdrew $167,899.68. The PNC Bank records evidencing these transactions were admitted.

Benjamin Little, a vice president at Branch Banking & Trust Company ("BB&T"), testified that the Debtor withdrew $9,998.00 from an SAB Irrevocable Trust checking account on December 18, 2013. Jeff Jacobs, a senior vice president and custodian of records at Central Bank, testified that the Debtor deposited $153,000 on December 18, 2013 into an SAB Irrevocable Trust account, withdrew $9,899.00 from that account on the same day, and again withdrew $9,899.00 on December 30, 2013. The Central Bank records were admitted into evidence.

Finally, the Trustee testified that, in response to this Court's turnover orders, BB&T turned over $65,000 held in an SAB account, PNC turned over $167,000 held in an SAB account, and Central Bank turned over $95,000 held in an SAB account. She further testified, however, that $137,000 once held in these accounts remains unaccounted for.

4. The Debtor's Mother's Finances

Two witnesses testified on the subject of Ms. Newton's finances: William Dennis, and the Trustee. Mr. Dennis was a co-worker and friend of Ms. Newton's second (and deceased)

5

husband, Virgil Newton. He testified that both he and Mr. Newton were locksmiths at Grott Locksmith and made $12 to $13 an hour, in forty-hour work weeks, until Mr. Newton's retirement in 2001. He further testified that Mr. Newton once borrowed $200 from him to close on a house. He was unable to testify to the value of Mr. Newton's estate at his death.

The Trustee testified to the real estate held by Ms. Newton's two late husbands, Mr. Newton and Edward Flora, and to the Flora estate. She testified that the Debtor was the sole beneficiary of the Flora estate, and that the Debtor's inheritance was limited to a piece of real estate which the Debtor transferred on several occasions. The Trustee testified that there was no record of Ms. Newton receiving value from these transfers. The Trustee moved into evidence, and the Court admitted, the probate file of Mr. Flora's estate, deeds to the property the Debtor inherited from Mr. Flora, and Kentucky Secretary of State filings on the Debtor-controlled LLCs to which the Debtor transferred that property.

## II.     Discussion

The Trustee seeks turnover of the fee Ms. Newton caused to be wire transferred and paid to Defendants for their representation of the Debtor, arguing that the fee is property of the estate. The Court has subject matter jurisdiction under 28 U.S.C. § 1334(b), and this is a core proceeding under 28 U.S.C. § 157(b)(2)(E).

Section 542(a) of the Code obligates entities in possession or control of "property that the trustee may use, sell, or lease under section 363" to turn that property over to the estate. 11 U.S.C. § 542(a). Section 363 permits the trustee to use, sell, or lease property of the estate. 11 U.S.C. § 363(b)(1). Therefore, §542 has universally been interpreted to apply only to estate property. *See Lawrence v. Commonwealth of Ky. Trans. Cabinet (In re Shelbyville Rd. Shoppes, LLC)*, 775 F.3d 789, 793 ("Fundamental to the concept of 'Turnover' is that the asset to be

turned over must be property of the debtor's bankruptcy estate.") (quoting *French v. Johnson (In re Coomer)*, 375 B.R. 800, 803-04 (Bankr. N.D. Ohio 2007) (alteration omitted)).

The definition of property of the estate applicable to the Debtor's case is multi-faceted. The Debtor's case was converted, on motion of the Chapter 13 Trustee, from chapter 13 to chapter 7 in December 2013. Section 348 provides that, except in instances where a debtor voluntarily converts her chapter 13 case in bad faith, *see* 11 U.S.C. § 348(f)(2), property of the estate in a converted chapter 13 case consists of property of the estate, as of the petition date, that remains in the possession or control of the debtor on the date of conversion. *See* 11 U.S.C. § 348(f)(1)(A). Thus, to prove that the funds wired to Defendants in January 2014 were estate property at the time of transfer, the Trustee would have to prove that the funds were property of the Debtor's estate as of the May 2013 petition date, and that the Debtor still had possession or control of those funds on the December 2013 conversion date.

The Court need not decide whether the Trustee proved any or all of these elements. Assuming that the funds were property of the estate under § 348, they ceased to be property of the estate upon their wire transfer to Defendants in January 2014. Therefore, the Trustee cannot obtain their turnover under § 542.

Section 541(a)(3) specifies the terms on which transferred property of the estate may re-enter the estate. It defines as property of the estate "[a]ny interest in property that the trustee recovers" under several enumerated sections. 11 U.S.C. § 541(a)(3). One of these sections, § 550, addresses the recovery of avoided "transfers." 11 U.S.C. § 550(a). The Code defines a transfer as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with (i) property; or (ii) an interest in property." 11 U.S.C. § 101(54)(D). The upshot of these provisions is clear: Estate property that is disposed of (transferred) post-

7

petition is no longer property of the estate, and does not re-enter the estate unless its transfer is avoided.

Precedent on this point is abundant and unanimous. Numerous courts have held that property a debtor voluntarily transfers is not subject to turnover unless–at least–its transfer is avoided.[2] *See, e.g.*, *Rajala v. Gardner*, 709 F.3d 1031, 1039 (10th Cir. 2013) ("[T]ransferred property is not part of the bankruptcy estate *until recovered*."); *Rosen v. Dahan (In re Minh Vu Hoang)*, 469 B.R. 606, 622 (D. Md. 2012) ("Where a post-petition transfer is not avoided . . . it is not 'property of the estate,' and because § 542(a) entitles the trustee to possess only property of the estate, the transferred property may not be recovered by way of the turnover provision."); *Liquidating Tr. of the Amcast Unsecured Creditor Liquidating Tr. (In re Amcast Indus. Corp.)*, 365 B.R. 91, 122 (Bankr. S.D. Ohio 2007) ("[A] turnover action cannot be used to demand . . . an unavoided transfer"); *In re 31-33 Corp.*, 100 B.R. 744, 747 (Bankr. E.D. Pa. 1989) ("'Section 542 . . . does not purport to cover voluntary transfers made postpetition by a debtor") (quoting *Walter's Disposal Serv., Inc. v. Atterbury (In re Walter's Disposal Serv., Inc.)*, 73 B.R. 6, 8.n.3 (Bankr. W.D. Mo. 1989)).

The parties agree that the $50,000 which is the subject of this action was voluntarily transferred to Defendants. They disagree only on the funds' source. If, as the Trustee claims, the Debtor gave the $50,000 to Ms. Newton with instructions to wire the money to Defendants, the Debtor voluntarily surrendered title to the money. Having, on this assumption, voluntarily surrendered her own title to the money, the estate lost whatever interest it had in the money. "Section 542(a) . . . allow[s] the trustee to obtain possession of property *only* where the debtor

---

[2] Whether turnover may be used, instead of § 550 recovery, to bring transferred funds into the estate *after* a transfer is avoided is an open question that the Court need not reach. *See Dunes Hotel Assocs. v. Hyatt Corp.*, 245 B.R. 492, 503-05 (D.S.C. 2000) (arguing that under a "literal reading" of the Code a trustee or debtor-in-possession may use § 542 after avoidance, but collecting multiple cases to the contrary).

otherwise had a right to possess the property." *Shelbyville Rd. Shoppes*, 775 F.3d at 793-94 (quoting *Coomer*, 375 B.R. at 806)).[3] The Trustee's "claim to estate property is no greater than the debtor's claim." *Id.* at 794. Here, the Debtor has no claim to Defendants' fee. The Trustee offered substantial evidence that the Debtor was the source of the $50,000 transferred to Defendants, and that the $50,000 may have been estate property before its transfer. The Trustee did not, however, avoid that transfer; thus, no evidence the Trustee adduced could prove that the now transferred $50,000 fee *is* estate property. Therefore, the fee is not subject to turnover.

**III.   Conclusion**

The Court will grant judgment to the Defendants. A judgment in conformity herewith shall be entered.

---

[3] The Sixth Circuit acknowledged in *Shelbyville Road Shoppes* that turnover actions may be maintained, in some instances, on the basis of future or contingent interests. *See* 775 F.3d at 795-96. Here, however, the Debtor has no future interest in Defendants' fee.

9

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Tracey N. Wise*
**Bankruptcy Judge**
Dated: Monday, August 10, 2015
(tnw)